IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOY TERRELL SMITH, | No. C 10-3684 SBA (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| K. CRUSE, et al., | (Docket no. 25) |
| Defendants. | |

# INTRODUCTION

Plaintiff Toy Terrell Smith, a state prisoner currently incarcerated at California State Prison - Sacramento, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. His claims are based on alleged constitutional violations which occurred at Pelican Bay State Prison (PBSP), where he was formerly incarcerated. The Complaint names the following Defendants: PBSP Correctional Counselors K. Cruse and D. Melton; and PBSP Correctional Officer N. Navarro.

Plaintiff alleges claims of deliberate indifference to safety as to Defendants Cruse and Melton, and a violation of his Fourteenth Amendment right to procedural due process as to Defendant Navarro. These allegations stem from a December 26, 2008 incident in which Plaintiff was released into a recreational yard along with another inmate listed on his enemy list. The two inmates engaged in a physical altercation, and a weapon -- specifically, a knife -- was allegedly found near Plaintiff. Plaintiff was subsequently found guilty of possession of a weapon. Plaintiff seeks monetary damages and injunctive relief.

Before the Court is Defendants' motion for summary judgment. For the reasons discussed below, the Court GRANTS Defendants' motion for summary judgment.

# BACKGROUND

## I. Factual Background

The following facts are undisputed unless otherwise noted.

Plaintiff was housed at PBSP from October 1999 until August 13, 2010. (Pl.'s Dep. at 12:12-21.) On September 24, 2007, Plaintiff and inmate Roquemore were engaged in a mutual combat. (Id. at 13:06-16.) Following the mutual combat, inmate Roquemore was listed on Plaintiff's enemy

1 list.  (Id. at 15:24-16:2.)  Plaintiff was then moved from Facility A to Facility B, while inmate
2 Roquemore remained in Facility A.  (Id. at 18:6-10.)

### A. Inmate Roquemore's Move to Facility B

In December 2008, inmate Roquemore was moved from Facility A to Facility B where Plaintiff was housed.  (Pl.'s Dep. at 25:21-23.)  The record does not identify the prison official who moved inmate Roquemore from Facility A to Facility B.  However, an inmate typically is moved by a Lieutenant through a Form 154 bed move, a Unit Classification Committee (UCC) chaired by a Facility Captain, or an Institutional Classification Committee (ICC) chaired by the Chief Deputy Warden.  (Melton Decl. 2:15-18.)

During the relevant time period, Defendant Melton was a Correctional Counselor I at PBSP for inmates in the Behavior Management Unit (BMU), and was assigned to prepare cases for the Unit Classification Committee (UCC) for the purpose of assigning inmates into the BMU.  (Melton Decl. at 1:25-28 - 2:1-2.)  Defendant Melton was the assigned counselor for Facility B inmates, but not Facility A inmates.  (Id. at 2:9-10.)  Plaintiff, who was still housed in Facility B, was one of the inmates on Melton's caseload.  (Id. at 1:25-27.)  In September 2008, Melton updated Plaintiff's enemy list and noted that inmate Roquemore was living in Facility A at that time.  (Pl.'s Dep. at 25:16-20; Melton Decl. at 2:3-5.)  The record shows that when inmate Roquemore was moved to Facility B in December 2008, he would have been housed in the orientation section of building B-8.  (Melton Decl. 2:19-21.)  When inmate Roquemore was moved to Facility B, he was not listed as one of the inmates on Melton's caseload.  (Id. at 2:19-21.)

Defendant Cruse was a Correctional Counselor II at PBSP on Facility B.  (Cruse Decl. 1:24-25.)  He was assigned to supervise the classification staff assigned to Facility B General Population (FBGP), support and develop program options for inmates assigned to FBGP, and/or act as a Facility Captain in matters relating to inmate classification.  (Id. at 1:25-28 - 2:1.)  In December 2008, Defendant Cruse did not do any work regarding Facility A nor did he sit on any classification committees related to Facility A.  (Id. at 2:7-8.)

2

### B.     December 2008 Incident with Inmate Roquemore

On December 26, 2008, Plaintiff claims that he was given a full body strip search and then released into Facility B's open yard space. (Compl. at 3.) Inmate Roquemore was also released into the Facility B yard, and they subsequently engaged in mutual combat. (Pl.'s Dep. at 41:1-13.) Defendant Navarro, who was the correctional officer monitoring that yard, witnessed Plaintiff and inmate Roquemore fighting. (Navarro Decl. 1:26.) Defendant Navarro and PBSP Correctional Officer Shellabarger approached Plaintiff and inmate Roquemore and ordered them to "get down." (Id. at 2:1-3.) However, Plaintiff and Roquemore continued fighting, prompting Defendant Navarro and Officer Shellabarger to spray Oleoresin Capsicum (O.C.) pepper spray in their respective faces. (Id. at 2:8-10.) Plaintiff and Roquemore then complied and laid down on the ground. (Id. at 2:10-15.) Plaintiff was then placed in handcuffs. (Id. at 2:19.)

Defendant Navarro rolled Plaintiff onto his left side and claimed that he saw a weapon underneath Plaintiff, though Plaintiff denies that he had a weapon. (Id. at 2:16-22; Compl. at 9.) Navarro allegedly picked up the weapon from underneath Plaintiff, "secreted" it, and entered it into evidence. (Navarro Decl. 2:21-22.) The weapon was approximately 4 and 5/8 inches long with a 2 1/4 inch tip sharpened to a point and approximately 7/16 inches wide. (Id. at 2:23-24.) Thereafter, Navarro drafted a rules violation report against Plaintiff based on the weapon that was allegedly found near him. (Id. at 3:10-11.) The rules violation report was then approved by Sergeant Thompson before being issued to Plaintiff. (Id. at 3:11-12.) Plaintiff subsequently received a rules violation report indicating that he was charged with possession of a weapon. (Id. at 3:9-10; Compl. at 9.)

Plaintiff was assigned an investigative employee to assist him with the disciplinary hearing relating to the possession of a weapon charge. (P.T. Smith Decl. at 2:1-2.) The assigned investigative employee questioned witnesses regarding the incident involving inmate Roquemore, including Defendants Navarro and Cruse, as well as Officers Risenhoover and Shellabarger. (Id. at 2:2-4.) The prison disciplinary hearing was held on February 9, 2009, after the District Attorney's office declined to prosecute. (Id. at 2:4-5.) During the hearing, the witnesses' responses were considered. (Id. at 2:2-4.) A photograph of the weapon was also reviewed, and Plaintiff provided a

3

1 written statement. (Id. at 2:5-6.) After the hearing, Plaintiff was found guilty and received a credit
2 loss of 360 days. (Id. at 2:6-7.)

3 Plaintiff challenged the guilty finding through an administrative appeal, claiming that he had
4 not seen the videotape of the fight at issue. (Compl. at 10; P.T. Smith Decl. 2:10-11.) Thereafter,
5 Plaintiff's guilty charge for possession of a weapon was dismissed, and Plaintiff was granted a new
6 administrative disciplinary hearing. (Compl. at 10.)

7 On April 29, 2009, a second administrative disciplinary hearing was held. (Id.) The
8 disciplinary hearing officers reviewed the videotape, photographs of the weapon, and Plaintiff's
9 testimony. (Id.) Plaintiff was again found guilty and assessed a credit loss of 360 days. (Id.; P.T.
10 Smith Decl. at 2:17-19.) Plaintiff then filed a second administrative appeal challenging the guilty
11 finding. (Compl. at 11.) He claimed that "out of three video recorder frames, one video frame was
12 not entered into evidence and that the missing video frame was the main video footage that was
13 filmed directly in front of the incident unlike the other two available video frames . . . from a long
14 distance." (Id.) Plaintiff's guilty finding was subsequently dismissed, and it was determined that
15 video evidence would not be used at the rehearing because the missing video frame could not be
16 found and the two available video frames were not helpful to determining what occurred. (Id.)

17 At the final hearing on August 6, 2009, Plaintiff was found guilty after the hearing officers
18 reviewed the photographs of the weapon and Plaintiff's written statement. (Id.; P.T. Smith Decl. at
19 3:1-2.) However, Plaintiff was not issued a credit loss because it was forfeited at the final hearing
20 due to a violation of time constraints. (Id.; P.T. Smith Decl. 3:2-3.)

21 Plaintiff filed an administrative appeal relating to his claims in this action at the highest level
22 of departmental review, which was denied on December 24, 2009. (Compl. at 11.) The guilty
23 finding of the possession of a weapon charge was never overturned, and the departmental chief of
24 inmate appeals concluded that "there was no wrongdoing on behalf of Pelican Bay prison officials
25 nor on behalf of administrative officials." (Id.)

26 **II.    Procedural History**

27 Plaintiff filed his initial complaint on August 19, 2010. Upon review of the complaint, the
28 Court construed the pleadings as alleging two separate claims. First, the Court found that Plaintiff

4

1  stated a cognizable Eighth Amendment claim of deliberate indifference to safety based on his
2  allegations of Defendants Cruse's and Melton's failure to ensure his safety and security needs when a
3  known prisoner enemy was transferred into his facility and a physical altercation ensued.  (Jan. 25,
4  2011 Order at 2.)  Second, the Court found that Plaintiff stated a cognizable Fourteenth Amendment
5  procedural due process claim based on Plaintiff's allegations that Defendant Navarro made false
6  allegations in a disciplinary hearing about a weapon found after the physical altercation between
7  Plaintiff and inmate Roquemore.  (Id.)  The Court ordered service of the complaint and directed
8  Defendants to respond.  (Id. at 1.)

9  On April 21, 2011, Plaintiff filed a motion for default judgment for failure to respond to the
10 complaint.  (Docket no. 12.)  The Court denied the motion for default judgment on April 25, 2011 as
11 premature because Defendants had not yet been served with the complaint nor had they appeared in
12 this action.  (Docket no. 14.)

13 On May 11, 2011, the summonses were returned executed for Defendants Melton and Cruse,
14 and on September 9, 2011, the summons for Defendant Navarro was returned executed.  (Docket
15 nos. 16, 17, 35.)

16 On May 12, 2011, Defendants Cruse, Melton and Navarro filed their answer to Plaintiff's
17 complaint.  (Docket no. 15.)

18 On July 26, 2011, Defendants Cruse, Melton and Navarro filed a motion for summary
19 judgment.  (Docket no. 25.)

20 On September 7, 2011, Plaintiff filed his opposition to Defendants' motion for summary
21 judgment.  (Docket no. 31.)

22 On September 12, 2011, Defendants filed a reply to Plaintiff's opposition.  (Docket no. 34.)

23 **DISCUSSION**

24 **I.     Motion for Summary Judgment**

25 **A.     Standard of Review**

26 Summary judgment is properly granted when no genuine and disputed issues of material fact
27 remain and when, viewing the evidence most favorably to the non-moving party, the movant is
28 clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S.

United States District Court
For the Northern District of California

317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

**B. Evidence Considered**

A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

In support of Defendants' motions for summary judgment, declarations and exhibits thereto have been filed by Defendants' Attorney, Susan E. Coleman, as well as Defendants Cruse, Melton and Navarro, and Associate Warden P. T. Smith -- all signed under penalty of perjury.

Plaintiff verified his complaint filed on August 19, 2010 by signing it under penalty of

1 perjury. Plaintiff also verified his declaration in opposition to the motion for summary judgment
2 filed on September 7, 2011 by signing it under penalty of perjury. However, Plaintiff has not
3 verified his opposition, which was not signed under the penalty of perjury. See Schroeder, 55 F.3d
4 at 460 & nn.10-11 (treating plaintiff's verified complaint as opposing affidavit where, even though
5 verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that
6 contents were true and correct, and allegations were not based purely on his belief but on his
7 personal knowledge). Therefore, for the purposes of this Order, the Court construes Plaintiff's
8 original complaint and his declaration as affidavits in opposition to Defendants' motion for summary
9 judgment under Rule 56 of the Federal Rules of Civil Procedure. See id.

### C. Legal Claims

Plaintiff maintains that in December 2008, Defendants Cruse and Melton acted with deliberate indifference to his physical safety by housing Plaintiff and inmate Roquemore in the same facility, which resulted in them being released into the same recreational area and subsequently engaging in mutual combat. Furthermore, Plaintiff claims that Defendant Navarro violated Plaintiff's Fourteenth Amendment procedural due process right when he made false allegations in a disciplinary hearing about a weapon found after the physical altercation between Plaintiff and inmate Roquemore. Plaintiff claims that the guilty charge from the prison disciplinary proceeding will result in a deprivation of liberty at his life prison parole consideration hearings. Further, he argues that he was not granted sufficient due process during the hearings.

#### 1. Deliberate Indifference Claim

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have an affirmative duty to protect inmates from violence at the hands of other inmates. See id. at 833. The failure of a prison official to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the objective component -- the deprivation alleged must be sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and (2) the subjective component -- the prison official must possess a sufficiently culpable state of mind. See

id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. Id. at 834 (citing Wilson, 501 U.S. at 298). With respect to the subjective component, the requisite state of mind depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

A prison official cannot be held liable under the Eighth Amendment for failing to guarantee the safety of a prisoner unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id.

Deliberate indifference describes a state of mind more blameworthy than negligence. See Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104). Negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. Farmer, 511 U.S. at 835. Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk. Id. at 836 & n.4.

Here, to be liable for failure to prevent serious harm to an inmate, Defendants Cruse and Melton must each individually know of and consciously disregard an excessive risk to Plaintiff's safety. See Farmer, 511 U.S. at 837. The Court finds that Plaintiff has failed to raise a triable issue as to whether these Defendants acted with deliberate indifference in regard to guaranteeing his personal safety. To survive Defendants' summary judgment motion, Plaintiff must raise a triable issue of fact as to both the objective and subjective prongs of the deliberate indifference standard. Viewing the evidence in the light most favorable to Plaintiff, there is no triable issue because these Defendants were not subjectively deliberately indifferent to a risk to Plaintiff's safety.

Plaintiff's deliberate indifference claims with respect to Defendants Cruse and Melton are untenable as a matter of law because these Defendants lacked the authority to move inmates from Facility A to Facility B, were not involved in inmate Roquemore's move specifically, and were unaware of inmate Roquemore being moved to Facility B. Cruse and Melton did not actually know, nor could they predict, that inmate Roquemore would be moved to the same facility as Plaintiff so as to consciously disregard Plaintiff's excessive risk to safety. Defendant Melton only knew of inmate Roquemore by name as a result of updating Plaintiff's enemy list several months prior to inmate Roquemore's move. Therefore, Defendant Melton would not have recognized inmate Roquemore when he was moved to Facility B. Additionally, there is no evidence that Defendant Cruse would have known of inmate Roquemore's name or been able to recognize him as an enemy on Plaintiff's enemy list. Thus, Plaintiff has not presented any evidence that either Defendant Cruse or Melton acted with criminal recklessness to amount to deliberate indifference.

Accordingly, the Court finds that Plaintiff has failed to raise a triable issue of fact as to whether Defendants Cruse and Melton acted with deliberate indifference under the subjective prong of Farmer, 511 U.S. at 834. Defendants Cruse and Melton are entitled to a judgment as a matter of law on Plaintiff's deliberate indifference claim.

### 2. **Fourteenth Amendment Due Process Claim**

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Before determining what process is due, the Court must establish that there is a procedurally protected interest. Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and the laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A state may not impose such changes without complying with minimum requirements of procedural due process. See id. at 484.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected

9

1 liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison
2 officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty
3 in question is one of "real substance." See id. at 477-87.  Generally, "real substance" will be limited
4 to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in
5 relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably
6 affect the duration of [a] sentence." Id. at 487.  The chance that a finding of misconduct will effect
7 the decision of a parole board to deny parole in the future is "simply too attenuated to invoke the
8 procedural guarantees of the Due Process Clause" to say that it will inevitably effect the duration of
9 a prisoner's sentence. Id.; see also Meachum v. Fano, 427 U.S. 215, 229 (1976).  Only if the state
10 statute or regulation narrowly restricts the power of prison officials to impose the deprivation and
11 that deprivation is one of "real substance" does the state statutory provision create a liberty interest
12 entitled to procedural due process. See, e.g., Myron v. Terhune, 476 F.3d 716, 718-19 (9th Cir.
13 2007).

14     Here, Plaintiff must establish a deprivation of a procedurally protected interest and that he
15 was not given the necessary due process when that protected interest was deprived.  Plaintiff's
16 alleged deprivation is that the duration of his sentence could be affected by the guilty charge from
17 the prison disciplinary proceeding.  A state statute or regulation creates this alleged deprivation by
18 establishing a disciplinary proceeding in response to a rules violation report.  By holding a
19 disciplinary hearing, the state statute or regulation "narrowly restricts" the power of prison officials
20 to impose the deprivation. Sandin, 515 U.S. at 477-487.  Also, the liberty in question is one of "real
21 substance" because it affects the duration of a prisoner's sentence by imposing a charge on the
22 prisoner's record with a potential loss of good time credits. Id.

23     In this case, although Plaintiff was initially assessed a credit loss of 360 days, that credit loss
24 was then withdrawn.  Therefore, Plaintiff is left with only the charge of possession of a weapon on
25 his record.  Under Sandin, any claim that such charge could potentially effect the duration of his
26 sentence in the future if a parole board denies parole is entirely speculative and attenuated.  As such,
27 Plaintiff has failed to raise a genuine issue of fact that he was deprived of a liberty interest.
28 However, Plaintiff may still raise a genuine issue of fact regarding his due process claim if he was

10

1  not deprived of a liberty interest.  First, even if no liberty interest is implicated, procedural due
2  process rights may be violated when a prison disciplinary sanction is supported by no evidence.
3  Burnsworth v. Gunderson, 179 F.3d 771, 773-74 (9th Cir. 1999).  Therefore, under Burnsworth,
4  Plaintiff's procedural due process rights could still be violated when no liberty interest is found if his
5  prison disciplinary sanction was supported by no evidence.  In his complaint, Plaintiff asserted that
6  (1) his due process rights were violated when he was found guilty without sufficient evidence, and
7  (2) he was not granted sufficient due process during the hearings.

8  In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary
9  proceedings do not satisfy due process requirements unless there is "some evidence" in the record to
10 support the findings of the prison disciplinary board.  Ascertaining whether the standard is satisfied
11 does not require examination of the entire record, independent assessment of the credibility of
12 witnesses or weighing of the evidence.  Id.  Instead, the relevant question is whether there is any
13 evidence in the record that could support the conclusion reached.  Id.  Additionally, the Ninth Circuit
14 has held that there must be some indicia of reliability of the information that forms the basis for
15 prison disciplinary actions.  See Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987).

16 In this case, a reasonable jury could find that there was some evidence to support the
17 disciplinary finding that Plaintiff possessed a weapon.  The findings were supported by some
18 evidence in the form of Defendant Navarro's initial incident report and photographs of the weapon.
19 Independent assessments of Defendant Navarro's credibility and weighing the photographs of the
20 weapon are not required in finding that there was some evidence.  See Superintendent, 472 U.S. at
21 455.  Also, there is some indicia of reliability to Defendant Navarro's incident report and to the
22 weapon because: (1) Defendant Navarro was present at the scene of the incident involving Plaintiff
23 and inmate Roquemore; (2) he turned over a weapon after the incident; and (3) he wrote up the
24 report and had it approved by Sergeant Thompson not long after the incident.  Therefore, even
25 though Plaintiff did not establish a liberty interest and could argue that his due process was violated
26 if his disciplinary sanction was supported by no evidence, Plaintiff's procedural due process was still
27 not violated because there was some evidence to support the disciplinary finding.

28 Second, even if there was a liberty interest found, Plaintiff was still accorded the necessary

1  due process at each of his hearings. The process due in such a prison disciplinary proceeding
2  includes written notice of the charges, time to prepare for the hearing, a written statement of
3  decision, allowance of witnesses and documentary evidence when not unduly hazardous to
4  institutional safety or correctional goals, and aid to the accused where the inmate is illiterate or the
5  issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974). Furthermore, the fact that a
6  prisoner may have been innocent of disciplinary charges brought against him does not give rise to a
7  constitutional claim. See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994). The Constitution
8  demands due process in disciplinary procedures, not error-free decision-making. (Id.)

9  Here, in each of his hearings, Plaintiff has been afforded the requisite due process and has
10 been informed of the decisions and the reasoning behind them. He received written notice of the
11 charges, an investigative employee to assist in his preparation for the hearing and to question
12 witnesses, preparation time for the proceeding, and the allowance of witnesses and documentary
13 evidence through his oral and written testimony and the witnesses' responses. Aid was not required
14 because Plaintiff is not illiterate nor is the matter complex; however, he was still given an
15 investigative employee to assist him. He was allowed to express his views through participation in
16 three disciplinary hearings and one administrative appeal and was thus informed of the charges and
17 given different opportunities to respond. As mentioned above, the fact that Plaintiff may be innocent
18 of the charge does not give rise to a constitutional claim if he was given the requisite amount of due
19 process. See Ricker, 25 F.3d at 1410. Plaintiff is not entitled to error-free decision-making.

20 Because the procedural protections set forth in Wolff were met in this case and the discipline
21 was supported by "some evidence" and indicia of reliability, there was no violation of Plaintiff's
22 right to due process. Accordingly, Defendant Navarro is entitled to a judgment as a matter of law on
23 Plaintiff's procedural due process claim.

24 **D.    Qualified Immunity**

25 Defendants claim that summary judgment is also proper in this case because they are entitled
26 to qualified immunity from liability for civil damages. The defense of qualified immunity protects
27 "government officials . . . from liability for civil damages insofar as their conduct does not violate
28 clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established."  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as had been required by Saucier, and holding that a court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her or his conduct was unlawful in the situation she or he confronted.  Saucier, 533 U.S. at 201-202.

Here, the Court has found no evidence that Defendants' actions rose to the level of a constitutional violation.  However, assuming that Plaintiff was deprived of a constitutional right, the Court considers whether Defendants' conduct was clearly unlawful.  Plaintiff alleges that Defendants Cruse and Melton were deliberately indifferent to his safety by housing inmate Roquemore in the same facility.  Additionally, Plaintiff alleges that Defendant Navarro violated his due process rights when he made a false allegation about a weapon found near Plaintiff.

The Court finds that Defendants are entitled to qualified immunity because they have produced sufficient evidence that a reasonable officer in their position would have believed that their actions were reasonable based on the circumstances they confronted.  Inmate Roquemore's transfer into Facility B was the result of a mistake in placement that was not within the control of Defendants Cruse and Melton.  It was not the role of Defendants Cruse and Melton to move inmates in Facility A.  Although Defendant Cruse had the ability to act as a Facility Captain in matters relating to inmate classification, he was not assigned to work on anything regarding Facility A nor did he sit on any committees relating to inmates in Facility A when inmate Roquemore's move was decided.  During that time, Defendant Cruse was assigned to Facility B.  Defendant Cruse did not know of inmate Roquemore's name nor would he have been able to recognize him as Plaintiff's enemy.

Moreover, because inmate Roquemore was not an inmate belonging to Defendant Melton's caseload when he was moved to Facility B, Defendant Melton did not know of inmate Roquemore's transfer. At the time when Defendant Melton updated Plaintiff's enemy list in September 2008, inmate Roquemore was still housed in Facility A. Defendant Melton only knew of inmate Roquemore by name and would not have recognized him as Plaintiff's enemy when he was moved into Facility B in December 2008. It would not have been clear to a reasonable officer that the actions taken by Defendants Cruse and Melton were unlawful. A reasonable officer in Defendants' position would have thought it lawful to continue their assigned duties as to Facility B.

With regard to Defendant Navarro, a reasonable officer in his position would have thought it lawful to: (1) respond to an attack between two inmates; (2) report a weapon found near Plaintiff after that physical altercation; (3) enter the weapon into evidence; and (4) draft a rules violation report for a weapon possession.

Because the law and circumstances in December 2008 did not put Defendants individually on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. See Saucier, 533 U.S. at 202. Accordingly, Defendants' motion for summary judgment is GRANTED.

**CONCLUSION**

In light of the foregoing, the Court orders as follows:

1. Defendants' motion for summary judgment (docket no. 25) is GRANTED. Plaintiff's federal claims stemming from the allegations in his complaints have all been resolved; however, the Court's ruling does not foreclose Plaintiff from proceeding with any related negligence or other state law claims in state court.

2. The Clerk of the Court shall enter judgment in favor of Defendants Cruse, Melton and Navarro. The Clerk shall also terminate all pending motions and close the file.

3. This Order terminates Docket no. 25.

IT IS SO ORDERED.

DATED: 3/30/12

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

TOY TERRELL SMITH,

        Plaintiff,

v.

K CRUSE et al,

        Defendant.

Case Number: CV10-03684 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 6, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Toy Terrell Smith D-92679
California State Prison - Sacramento
P.O. Box 290066
Represa, CA 95671

Dated: April 6, 2012

                                Richard W. Wieking, Clerk
                                By: Lisa Clark, Deputy Clerk